UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

| | |
|---|---|
| CROSSOVER MARKET LLC, TRILOGY, INC., TRILOGY ENTERPRISES, INC., AND AUREA SOFTWARE, INC.<br>Plaintiffs<br><br>v.<br><br>STEPHANIE NEWELL<br>Defendant | §§§§§§§§§§<br><br>Civil Action No.: 1:21-cv-640 |

## ORIGINAL COMPLAINT

### NATURE OF THE ACTION

1. Crossover Market LLC ("Crossover"), Trilogy, Inc. ("Trilogy"), Trilogy Enterprises, Inc. ("Trilogy Enterprises), and Aurea Software, Inc. ("Aurea") (collectively "Plaintiffs") seek injunctive relief and damages against Stephanie Newell for her breach of contract; her violation of several provisions of the Texas Penal Code; and her violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), resulting from Newell improperly accessing Plaintiffs' computer systems and improper disclosure of Plaintiffs' confidential and proprietary information.

2. During her time working as an independent contractor for Crossover, an Austin-based software company that helps companies across the country and the globe recruit top-quality remote workers, Newell became disgruntled and decided to steal and publicly disclose the confidential and proprietary information of Crossover and at least three of its related entities, Trilogy and Aurea. In an explicit breach of her contractual obligations to Crossover, Trilogy, Trilogy Enterprises, and Aurea, Newell improperly accessed their computer systems for the

purposes of improperly transmitting significant amounts of confidential and proprietary company information to unauthorized third parties with the intent to injure and harm Plaintiffs.

3. Crossover, Trilogy, Trilogy Enterprises, and Aurea seek preliminary and permanent injunctions as well as monetary and other appropriate relief against Newell for her unlawful actions.

4. In filing this complaint, Plaintiffs particularly seek at the outset of this action to prevent any further disclosure of their confidential and proprietary information and return of any confidential and proprietary information that is in Newell's possession.

## PARTIES

5. Plaintiff Crossover Market LLC (hereinafter "Crossover") is a Delaware limited liability company with its principal place of business in Austin, Texas.

6. Plaintiff Trilogy, Inc. (hereinafter "Trilogy") is a Delaware corporation with its principal place of business in Austin, Texas.

7. Plaintiff Trilogy Enterprises, Inc. (hereinafter "Trilogy Enterprises") is a Delaware corporation with its principal place of business in Austin, Texas.

8. Plaintiff Aurea Software, Inc. (hereinafter "Aurea") is a Delaware corporation with its principal place of business in Austin, Texas.

9. Defendant Stephanie Newell is a resident of Carmel, Indiana.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over the claim arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C). This Court has subject-matter jurisdiction over the state-law claims under 28 U.S.C. § 1367(a). This Court also has subject-

matter jurisdiction over the state-law claims under 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties and the amount-in-controversy exceeds $75,000.

11. This Court has personal jurisdiction over Defendant Stephanie Newell because she had contacts with Texas with respect to the acts complained of herein, including affirmatively seeking to provide services to Texas-based entities, affirmatively contracting with Texas-based entities to provide services, intentionally accessing the computer systems of the Texas-based Plaintiffs to improperly extract information from them in order to harm those Texas-based entities, and breaching her contractual obligations by improperly accessing Plaintiffs' confidential and proprietary information.

12. Venue is proper in this district because a substantial part of the events giving rise to the claims occurred in Austin, Texas.

## FACTUAL BACKGROUND

13. Crossover is a recruitment platform that connects professionals with companies across the globe offering flexible work on an independent-contractor basis. Crossover is an affiliate of ESW Capital, LLC, a Delaware limited liability company based in Austin, Texas. ESW Capital is a venture-capital and private-equity group that focuses on buying, strengthening, and growing mature business software companies.

14. Trilogy is a software company that provides a comprehensive business platform that helps other software companies streamline their business functions—from development to product management and Research & Development. Trilogy is also an affiliate of ESW Capital.

15. Trilogy Enterprises is a software company related to Trilogy, which provides a comprehensive business platform that helps other software companies streamline their business

functions—from development to product management and Research & Development.  Trilogy is also an affiliate of ESW Capital.

16.     Aurea is a software company that provides a platform and solutions to companies for their end-to-end customer experiences, including products for process management, messaging, customer relationship management, email marketing, and collaboration software. Aurea too is an affiliate of ESW Capital.

17.     In May 2020, Stephanie Newell contacted Crossover for the purpose of offering her services as an independent contractor.  Newell affirmatively contacted Crossover to offer her services on several projects on which Crossover, a Texas based entity, needed assistance.  Through Newell's actions she affirmatively sought to provide services to Crossover and its Texas based customers, including Trilogy, Trilogy Enterprises, and Aurea.  In June 2020, Crossover engaged Stephanie Newell as an independent contractor.  As a condition of becoming a Crossover independent contractor, Newell entered into an agreement with Crossover, entitled "Independent Contractor Services Agreement" (hereinafter, "Independent Contractor Agreement").  See Exhibit A.  As part of this agreement, Newell made a series of promises to Crossover.  Specifically, Newell agreed:

>   a.    "to keep confidential all Deliverables and all technical, product, business, financial, and other information regarding the business and software programs of our Company, its Affiliates, customers, employees, investors, contractors, vendors and suppliers (the 'Confidential Information.')." Exhibit A, ¶ 4.1.  This included, but was not limited to, "programming techniques and methods, research and development, computer programs, documentation, marketing plans, customer identity, and business methods." *Id.*

4

   b. that "Confidential Information includes all information and materials disclosed orally or in any other form, regarding the Site, [the] Company's or its Customers' software products or software product development including, but not limited to, the configuration techniques, data classification techniques, user interface, applications programming interfaces, data modeling and management techniques, data structures, and other information of or relating to [the] Company's or its Customer's software products or derived from testing or other use." *Id.*

   c. "to protect and safeguard the Confidential Information at all times and not to disclose, give, transmit or otherwise convey any Confidential Information, in whole or in part, to any other party." Exhibit A, ¶ 4.2.

   d. not to "use any Confidential Information for your own purpose or for the benefit of any third party and will honor the copyrights and other intellectual property rights of [the] Company and will not copy, duplicate, or in any manner reproduce any such copyrighted materials." Exhibit A, ¶ 4.3.

   e. that "[t]o the extent [she has] access to or use[s] [the] Company facilities or Customer facilities, hardware, software, network devices, network services, associated components, e-mail accounts or data owned or managed by [the] Company, Affiliates, or Customers, [she would] comply at all times with the applicable rules and regulations regarding safety, security, use, and conduct as reasonable requested by [the] Company, Affiliates or Customers." Exhibit A, ¶ 6.2.

   f. that if "[the] Company or a Customer provides any computer(s), hardware, software, telephone, or other tools (collectively the 'Loaned Equipment'), the same will continue to be [the Company's] property and [Newell would] use the Company Equipment

5

exclusively to provide the services under this Agreement and in accordance with the applicable internal policies." Exhibit A, ¶ 6.4.

18. The services that Newell provided to Crossover included acting as a Talent Acquisition Consultant. In that capacity, Newell received access to confidential information about Crossover, Trilogy, Trilogy Enterprises, Aurea, and their affiliates. Newell assisted in hiring and human-resources tasks related to engineers working at Trilogy. Newell also assisted with tasks related to Aurea.

19. Between 2020 and 2021, in explicit breach of the Independent Contractor Agreement, Newell improperly and unlawfully disclosed Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's confidential and proprietary information with unauthorized third parties in an effort to damage and harm Plaintiffs. Specifically, Newell improperly disclosed Plaintiffs' confidential and proprietary information to Nathan Vardi, a Senior Editor at *Forbes* Media, and also improperly accessed and provided Vardi unauthorized access to Plaintiffs' computer systems. Newell also improperly downloaded Plaintiffs' confidential and proprietary information to her personal computer and improperly transmitted confidential and proprietary information by sending attachments and links to cloud-based documents.

20. Newell had no legitimate purpose for downloading confidential and proprietary information to her personal computer or for providing this information to Vardi. Independent contractors, including Newell, were frequently reminded of Plaintiffs' confidentiality policy. Newell received no permission to violate this confidentiality policy.

21. On April 27, 2021, Vardi published an article on the *Forbes* website, entitled "The Billionaire Who Pioneered Remote Work Has A New Plan To Turn His Workers Into Algorithms." That article contained confidential information that Newell shared with Vardi, including for

example a copy of a Trilogy Enterprises' internal "new playbook."  Additional confidential information shared in the article, which Vardi obtained from Newell, included the contents of internal email communications sent by the founder of ESW Capital as well as confidential salary and staffing information related to Crossover specifically.  The article also shared information reflected in "internal text messages" and improperly disclosed confidential internal messages between Crossover representatives and contractors.

22. In March 2021, after Newell had shared confidential information with Vardi but before the article was published, Crossover terminated Newell's Independent Contractor Agreement.

23. While an independent contract for Plaintiffs, Newell improperly and without authorization provided confidential and proprietary information to Vardi from her personal email account.  As a result of this and potentially other activities, Newell still has access to or possession of Plaintiffs' confidential and proprietary information.

## COUNT ONE
### Breach of Contract (Texas Common Law)

24. Paragraphs 1–23 are realleged as if fully set forth herein.

25. In June 2020, Newell entered into the Independent Contractor Agreement.  As part of that agreement, Newell agreed "to keep confidential all Deliverables and all technical, product, business, financial, and other information regarding the business and software programs of our Company, its Affiliates, customers, employees, investors, contractors, vendors and suppliers (the 'Confidential Information.')"

26. Under the Independent Contractor Agreement, Newell acknowledged that "Confidential Information includes all information and materials disclosed orally or in any other form, regarding the Site, [the] Company's or its Customers' software products or software product

development including, but not limited to, the configuration techniques, data classification techniques, user interface, applications programming interfaces, data modeling and management techniques, data structures, and other information of or relating to [the] Company's or its Customer's software products or derived from testing or other use."

27. Under the Independent Contractor Agreement, Newell agreed "to protect and safeguard the Confidential Information at all times and not to disclose, give, transmit or otherwise convey any Confidential Information, in whole or in part, to any other party."

28. Under the Independent Contractor Agreement, Newell agreed not to "use any Confidential Information for your own purpose or for the benefit of any third party and will honor the copyrights and other intellectual property rights of [the] Company and will not copy, duplicate, or in any manner reproduce any such copyrighted materials."

29. Under the Independent Contractor Agreement, Newell agreed that "[t]o the extent [she has] access to or use[s] [the] Company facilities or Customer facilities, hardware, software, network devices, network services, associated components, e-mail accounts or data owned or managed by [the] Company, Affiliates, or Customers, [she would] comply at all times with the applicable rules and regulations regarding safety, security, use, and conduct as reasonable requested by [the] Company, Affiliates or Customers."

30. Under the Independent Contractor Agreement, Newell agreed that if "[the] Company or a Customer provides any computer(s), hardware, software, telephone, or other tools (collectively the 'Loaned Equipment'), the same will continue to be [the Company's] property and [Newell would] use the Company Equipment exclusively to provide the services under this Agreement and in accordance with the applicable internal policies."

31. Crossover has performed all of its material obligations under the Independent Contractor Agreement. Any conditions precedent have been satisfied.

32. Trilogy, Trilogy Enterprises, Aurea, and other affiliates of ESW Capital are third-party beneficiaries of the Independent Contractor Agreement.

33. Newell materially breached each of the foregoing contractual provisions relating to confidential information. While still an independent contractor for Crossover, Newell improperly and in direct violation of her contractual obligations, transmitted a substantial quantity of Crossover's confidential and proprietary information to third parties, including Vardi. While still an independent contractor for Crossover, Newell improperly and in direct violation of her contractual obligations, transmitted a substantial quantity of Trilogy's confidential and proprietary information to third parties, including Vardi. While still an independent contractor for Crossover, Newell improperly and in direct violation of her contractual obligations, transmitted a substantial quantity of Trilogy Enterprises' confidential and proprietary information to third parties, including Vardi. While still an independent contractor for Crossover, Newell improperly and in direct violation of her contractual obligations, transmitted a substantial quantity of Aurea's confidential and proprietary information to third parties, including Vardi.

34. Crossover, Trilogy, Trilogy Enterprises, and Aurea have sustained, and will continue to sustain, damages and irreparable harm as a result of Newell's contractual breaches.

## COUNT TWO
### Tex. Civ. Prac. & Rem. Code § 143.001; Texas Penal Code § 33.02(a)

35. Paragraphs 1–34 are realleged as if fully set forth herein.

36. Newell knowingly accessed Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's computer systems for the purpose of engaging in an improper and unauthorized transfer of Crossover's confidential and proprietary information from the computer system to Vardi. Tex.

Penal Code § 33.01(1) (defining "access" to include "otherwise mak[ing] use of any resource of a computer, computer network, computer program, or computer system").

37. Newell was provided access to Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's computer systems and confidential and proprietary information for the sole purpose of providing professional services to Plaintiffs. Newell expressly agreed not to "disclose, give, transmit or otherwise convey" Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's confidential and proprietary information "in whole or in party, to any other party." Newell's access to and ability to use Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's confidential and proprietary information was narrow and limited. Newell lacked the effective consent of Crossover, Trilogy, Trilogy Enterprises, and Aurea to share confidential information with Vardi. Tex. Pen. Code § 33.01(12)(E) ("'Effective consent' includes consent by a person legally authorized to act for the owner. Consent is not effective if . . . used for a purpose other than that for which consent was given.").

38. Newell's accessing of Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's computer systems to provide information to Vardi lacked Plaintiffs' effective consent and was therefore a violation of Texas Penal Code § 33.02(a) (making it a criminal offense to "knowingly access a computer, computer network, or computer system without the effective consent of the owner").

39. Crossover, Trilogy, Trilogy Enterprises', and Aurea were injured as a result of Newell's violation of Texas Penal Code § 33.02(a). Newell's conduct was knowing or intentional, and thus Plaintiffs are entitled to bring—and do hereby bring—a civil action for actual damages and reasonable attorneys' fees and costs under Tex. Civ. Prac. & Rem. Code §§ 143.001, 143.002.

## COUNT THREE
## Tex. Civ. Prac. & Rem. Code § 143.001; Texas Penal Code § 33.02(b-1)

40. Paragraphs 1–39 are realleged as if fully set forth herein.

41. Newell knowingly and intentionally accessed Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's computer systems for the purpose of improperly transferring Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's confidential and proprietary information from the computer systems to an unauthorized third-party, Vardi. Tex. Penal Code § 33.01(1) (defining "access" to include "otherwise mak[ing] use of any resource of a computer, computer network, computer program, or computer system").

42. Newell accessed Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's computer networks and computer systems with the intent to harm Plaintiffs by providing their confidential and proprietary information to Vardi in violation of clear and conspicuous prohibitions on such behavior in the Agreement. Thus, Newell lacked the effective consent of Plaintiffs to share confidential information with Vardi. Tex. Pen. Code § 33.01(12)(E) ("'Effective consent' includes consent by a person legally authorized to act for the owner. Consent is not effective if . . . used for a purpose other than that for which consent was given."). Newell also violated the confidentiality provisions of the Independent Contractor Agreement, in violation of Tex. Pen. Code § 33.02(b-1)(2)(B)(ii).

43. Newell intended to harm Crossover, Trilogy, Trilogy Enterprises, and Aurea by providing the confidential information to Vardi with the hope that his article would denigrate Plaintiffs and thus disadvantage or injure Plaintiffs. Tex. Pen. Code § 33.01(14) (defining "harm" to include "any other loss, disadvantage, or injury that might reasonably be suffered as a result of the actor's conduct").

44. Crossover, Trilogy, Trilogy Enterprises, and Aurea were injured as a result of Newell's violation of Texas Penal Code § 33.02(b-1). Newell's conduct was knowing or intentional, and thus Plaintiffs are entitled to bring—and do hereby bring—a civil action for actual damages and reasonable attorneys' fees and costs under Tex. Civ. Prac. & Rem. Code §§ 143.001, 143.002.

**COUNT FOUR**
**The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C)**

45. Paragraphs 1–44 are realleged as if fully set forth herein.

46. Newell intentionally accessed Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's computers in the process of creating and sending links to cloud-based documents containing confidential information from the computer systems to Vardi. 18 U.S.C. § 1030(a)(2). Newell also intentionally accessed Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's computers in the process of uploading files to cloud-based documents in order to transfer confidential information from the computer systems to Vardi. 18 U.S.C. § 1030(a)(2). And Newell intentionally accessed Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's computers in the process of downloading files in order to attach them to emails to Vardi in order to transfer confidential information from the computer systems to him. 18 U.S.C. § 1030(a)(2).

47. Newell did so without authorization and exceeding her authorized access because the confidentiality provisions of her Independent Contractor Agreement expressly barred her from transmitting confidential information to other parties. 18 U.S.C. § 1030(a)(2). Newell knew that she lacked authorization to transmit confidential information to Vardi, and thus she intentionally violated her agreement with Crossover.

48. Newell obtained information from Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's computers, which are protected computers because they are used for the purpose of

conducting Plaintiffs' interstate and foreign commerce.  18 U.S.C. § 1030(a)(2)(c); 18 U.S.C. § 1030(e)(2).

49. Newell's conduct caused Crossover, Trilogy, Trilogy Enterprises, and Aurea to suffer more than $5,000 in damage or loss, including the cost of responding to this offense.  18 U.S.C. § 1030(g); 18 U.S.C. § 1030(c)(4)(A)(i)(I); 18 U.S.C. § 1030(e)(11).

50. Thus, Plaintiffs are entitled to compensatory damages and injunctive relief or other equitable relief.  18 U.S.C. § 1030(g).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Crossover, Trilogy, Trilogy Enterprises, and Aurea respectfully request entry of judgment in their favor and against Defendant Newell.  Plaintiffs seek the following measures of relief:

A. Temporary and permanent injunctions:

1. Prohibiting Newell from using, disclosing, disseminating, distributing, or discussing Plaintiffs' proprietary and confidential information; and

2. Directing Newell to return or destroy all copies of Plaintiffs' confidential information that are in her possession, custody, or control and any information derived, directly or indirectly, from Plaintiffs' proprietary and confidential information that is in her possession, custody, or control;

B. Statutory, compensatory, exemplary, and punitive damages, in an amount to be proven at trial, caused by Defendant's breach of contract, violations of Texas Civil Practices and Remedies Code Section 143, violations of the Computer Fraud and Abuse Act, and violations of Texas common law;

C. Attorneys' fees and costs associated with prosecuting this action; and

D.      Such other and further relief as this Court deems just and proper.

DATED: July 19, 2021                    Respectfully submitted,

                                              QUINN EMANUEL URQUHART & SULLIVAN, LLP

/s/ Scott L. Cole

Scott L. Cole
scottcole@quinnemanuel.com
Texas State Bar No. 00790481
Asher B. Griffin
ashergriffin@quinnemanuel.com
Texas State Bar No. 24036684
201 West 5th Street
11th Floor
Austin, Texas 78701
(737) 667-6100 (Main)
(737) 667-6110 (Fax)

Attorneys for Plaintiffs

14