UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| CROSSOVER MARKET LLC, TRILOGY, INC., TRILOGY ENTERPRISES, INC., AND AUREA SOFTWARE, INC.,<br><br>  *Plaintiffs*,<br><br>vs.<br><br>STEPHANIE NEWELL,<br><br>  *Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§  Civil Action No. 1:21-cv-640-LY<br>§<br>§<br>§<br>§<br>§ |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT, OR, IN THE ALTERNATIVE, COMPEL MEDIATION**

TO THE HONORABLE JUDGE OF THE COURT:

Defendant, Stephanie Newell ("Newell"), respectfully submits this Motion to Dismiss Plaintiffs' Original Complaint, or, in the Alternative, Compel Mediation and in support thereof states as follows:

### I.  DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT

Newell submits this Motion to Dismiss Plaintiffs' Original Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

#### INTRODUCTION

The Original Complaint filed by Crossover Market LLC, Trilogy, Inc., Trilogy Enterprises, Inc., and Aurea Software, Inc. (collectively, the "Plaintiffs") raises four claims against Newell. In Count One, Plaintiffs allege that Newell entered into a document titled Independent Contractor Services Agreement (the "Independent Contractor Agreement," attached to the Original Complaint as <u>Exhibit A</u>) with the "Company" and then materially breached provisions of the Independent Contractor Agreement relating to information they consider confidential and proprietary.

1

Plaintiffs also contend that Newell's alleged conduct in breach of the Independent Contractor Agreement also violates Texas Penal Code § 33.02(a) (Count Two), Texas Penal Code § 33.02(b-1) (Count Three), and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) (Count Four).  But significantly, the Independent Contractor Agreement document attached to Plaintiffs' Original Complaint **is *not* signed or acknowledged in any form by Newell** or by any Plaintiff.  *See* Exhibit A.  Nor is Newell named or otherwise identified in the Independent Contractor Agreement document.  *See* Exhibit A.  Thus, the document attached as Exhibit A to the Original Complaint cannot, in any way, support Plaintiffs' pleaded assertion that Newell entered into—let alone materially breached—the Independent Contractor Agreement.

Because Plaintiffs fail to plead sufficient facts establishing that the Independent Contractor Agreement document constitutes a valid contract with Newell as minimally necessary to state a viable claim for relief under Count One, and because Plaintiffs' statutory claims as pleaded in Counts Two through Four are **wholly contingent** upon the Independent Contractor Agreement document contractually binding Newell, each count is legally deficient on its face.  No other counts remain.  As a result, the Original Complaint in its entirety must be dismissed as a matter of law.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint; specifically, whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

**FACTUAL ALLEGATIONS**

Plaintiffs' allegations in the Original Complaint, which must be assumed to be true for purposes of this Motion only, are straightforward. Beginning in June 2020, Plaintiff Crossover Market LLC engaged Newell as an independent contractor. (Original Complaint at ¶ 17.) According to the Original Complaint:

> As a condition of becoming a Crossover independent contractor, Newell entered into an agreement with Crossover, entitled "Independent Contractor Services Agreement" (hereinafter, "Independent Contractor Agreement"). *See* Exhibit A. As part of this agreement, Newell made a series of promises to Crossover. Specifically, Newell agreed:
>
> > "to keep confidential all Deliverables and all technical, product, business, financial, and other information regarding the business and software programs of our Company, its Affiliates, customers, employees, investors, contractors, vendors and suppliers (the 'Confidential Information.')." Exhibit A, ¶ 4.1.
> >
> > "to protect and safeguard the Confidential Information at all times and not to disclose, give, transmit or otherwise convey any Confidential Information, in whole or in part, to any other party." Exhibit A, ¶ 4.2.
> >
> > not to "use any Confidential Information for your own purpose or for the benefit of any third party and will honor the copyrights and other intellectual property rights of [the] Company and will not copy, duplicate, or in any manner reproduce any such copyrighted materials." Exhibit A, ¶ 4.3.
> >
> > that "[t]o the extent [she has] access to or use[s] [the] Company facilities or Customer facilities, hardware, software, network devices, network services, associated components, e-mail accounts or data owned or managed by [the] Company, Affiliates, or Customers, [she would] comply at all times with the applicable rules and regulations regarding safety, security, use, and conduct as reasonably requested by [the] Company, Affiliates or Customers." Exhibit A, ¶ 6.2.
> >
> > that if "[the] Company or a Customer provides any computer(s), hardware, software, telephone, or other tools . . . the same will continue to be [the Company's] property and [Newell would] use the Company Equipment exclusively to provide the services under this Agreement and in accordance with the applicable internal policies." Exhibit A, ¶ 6.4.

> The services that Newell provided to Crossover included acting as a Talent Acquisition Consultant. In that capacity, Newell received access to confidential information about Crossover, Trilogy, Trilogy Enterprises, Aurea, and their affiliates.
>
> Between 2020 and 2021, in explicit breach of the Independent Contractor Agreement, Newell improperly and unlawfully disclosed Crossover's, Trilogy's, Trilogy Enterprises', and Aurea's confidential and proprietary information with unauthorized third parties in an effort to damage and harm Plaintiffs. Specifically, Newell improperly disclosed Plaintiffs' confidential and proprietary information to Nathan Vardi, a Senior Editor at *Forbes* Media, and also improperly accessed and provided Vardi unauthorized access to Plaintiffs' computer systems. Newell also improperly downloaded Plaintiffs' confidential and proprietary information to her personal computer and improperly transmitted confidential and proprietary information by sending attachments and links to cloud-based documents.
>
> Newell had no legitimate purpose for downloading confidential and proprietary information to her personal computer or for providing this information to Vardi.
>
> On April 27, 2021, Vardi published an article on the *Forbes* website, entitled "The Billionaire Who Pioneered Remote Work Has A New Plan To Turn His Workers Into Algorithms." The article contained confidential information that Newell shared with Vardi, including for example a copy of a Trilogy Enterprises' internal "new playbook." Additional confidential information shared in the article, which Vardi obtained from Newell, included the contents of internal email communications sent by the founder of ESW Capital as well as confidential salary and staffing information related to Crossover specifically. The article also shared information reflected in "internal text messages" and improperly disclosed confidential internal messages between Crossover representatives and contractors.
>
> In March 2021, after Newell had shared confidential information with Vardi but before the article was published, Crossover terminated Newell's Independent Contractor Agreement.
>
> While an independent contractor for Plaintiffs, Newell improperly and without authorization provided confidential and proprietary information to Vardi from her personal email account. As a result of this and potentially other activities, Newell still has access to or possession of Plaintiffs' confidential and proprietary information.

(Original Complaint at ¶¶ 17(a), 17(c)-(f), 18-23.)

On the basis of these allegations, and their foundational contention that Independent Contractor Agreement document contractually binds Newell, Plaintiffs articulate the following claims against Newell:

### COUNT I — BREACH OF CONTRACT (TEXAS COMMON LAW)

In June 2020, Newell entered into the Independent Contractor Agreement.

Crossover has performed all of its material obligations under the Independent Contractor Agreement. . . . Trilogy, Trilogy Enterprises, Aurea, and other affiliates of ESW Capital are third-party beneficiaries of the Independent Contractor Agreement.

Newell materially breached each of the foregoing contractual provisions relating to confidential information.

While still an independent contractor for Crossover, Newell improperly and **in direct violation of her contractual obligations**, transmitted a substantial quantity of [Plaintiffs'] confidential and proprietary information to third parties, including Vardi.

Plaintiffs have sustained, and will continue to sustain, damages and irreparable harm as a result of Newell's contractual breaches.

(Original Complaint at ¶¶ 25, 31-34) (emphasis added).

### COUNT II — TEXAS PENAL CODE § 33.02(a); TEX. CIV. PRAC. & REM. CODE § 143.001

Newell knowingly accessed [Plaintiffs'] computer systems for the purpose of engaging in an improper and unauthorized transfer of Crossover's confidential and proprietary information from the computer system to Vardi.

Newell **expressly agreed** not to "disclose, give, transmit or otherwise convey" [Plaintiffs'] confidential or proprietary information "in whole or in part, to any other party."

Newell's accessing of [Plaintiffs'] computer systems to provide information to Vardi **lacked Plaintiffs' effective consent** and was therefore a violation of Texas Penal Code § 33.02(a).

[Plaintiffs] were injured as a result of Newell's violation of Texas Penal Code § 33.02(a). Newell's conduct was knowing or intentional.

(Original Complaint at ¶¶ 36-39) (emphases added).

<u>COUNT III — TEXAS PENAL CODE § 33.02(b-1); TEX. CIV. PRAC. & REM. CODE § 143.001</u>

>Newell knowingly and intentionally accessed [Plaintiffs'] computer systems for the purpose of improperly transferring [Plaintiffs'] confidential and proprietary information from the computer systems to an unauthorized third-party, Vardi.
>
>Newell accessed [Plaintiffs'] computer networks and computer systems with the intent to harm Plaintiffs by providing their confidential and proprietary information to Vardi **in violation of clear and conspicuous prohibitions on such behavior in the [Independent Contractor] Agreement**. *Thus,* **Newell lacked the effective consent** of Plaintiffs to share confidential information with Vardi.
>
>Newell also **violated the confidentiality provisions of the Independent Contractor Agreement**, in violation of Texas Pen. Code § 33.02(b-1)(2)(B)(ii).
>
>Newell intended to harm [Plaintiffs] by providing the confidential information to Vardi with the hope that his article would denigrate Plaintiffs and thus disadvantage or injure Plaintiffs.
>
>[Plaintiffs] were injured as a result of Newell's violation of Texas Penal Code § 33.02(b-1). Newell's conduct was knowing or intentional.

(Original Complaint at ¶¶ 41-44) (emphases added).

<u>COUNT IV — THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030(a)(2)(C)</u>

>Newell intentionally accessed [Plaintiffs'] computers in the process of creating and sending links to cloud-based documents containing confidential information from the computer systems to Vardi.
>
>Newell also intentionally accessed [Plaintiffs'] computers in the process of uploading files to cloud-based documents in order to transfer confidential information from the computer systems to Vardi.
>
>And Newell intentionally accessed [Plaintiffs'] computers in the process of downloading files in order to attach them to emails to Vardi in order to transfer confidential information from the computer systems to him.
>
>Newell did so without authorization and exceeding her authorized access *because* **the confidentiality provisions of her Independent Contractor Agreement expressly barred her** from transmitting confidential information to other parties.
>
>Newell knew that she lacked authorization to transmit confidential information to Vardi, and thus she **intentionally violated her agreement** with Crossover.

(Original Complaint at ¶¶ 46–49) (emphases added).

6

To remedy these claims, Plaintiffs seek a temporary injunction; a permanent injunction; statutory, compensatory, exemplary, and punitive damages; attorneys' fees and costs; and all other appropriate relief.

## ARGUMENT AND AUTHORITIES

Plaintiffs' claims in the Original Complaint that Newell breached the Independent Contractor Agreement's express contractual obligations, and in doing so violated Texas Penal Code §§ 33.02(a)-33.02(b-1) and 18 U.S.C. § 1030(a)(2)(C), should be dismissed outright.  Under Texas law, a breach of contract claim only survives a motion to dismiss if plaintiffs plead factual content that allows the Court to reasonably infer: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Witcher v. Bank of America, N.A.*, 2016 WL 11591770 at *3 (W.D. TX Dec. 28, 2016) (citing *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).  With respect to the critical first element, "Plaintiffs must plead sufficient facts to plausibly show that both **a valid contract existed and that each individual defendant was a party to the contract**."  *Morris v. JP Morgan Chase Bank, N.A.*, 2013 WL 8476110 at *3-4 (W.D. TX Jan. 29, 2013) (emphasis added).

Here, Plaintiffs fail on both points.  Though Plaintiffs allege that "[a]s a condition of becoming a Crossover independent contractor, Newell entered into ***an*** agreement with Crossover, entitled [Independent Contractor Agreement]," (Original Complaint at ¶ 17) (emphases added), Plaintiffs fail to plead facts allowing the Court to reasonably infer that ***the*** Independent Contractor Agreement document attached to the Original Complaint as Exhibit A is a valid contract between Plaintiffs (individually or collectively) and Newell, or that Newell agreed to be bound by the document's terms.  *See* Exhibit A.  This is because the Independent Contractor Agreement

document provided by Plaintiffs **is not signed, initialed, or acknowledged in any form by Newell**, by any Plaintiff, or by any other individual or entity. *See* <u>Exhibit A</u>.[1] Newell is **not named or otherwise personally identified** in the Independent Contractor Agreement document; similarly, the document fails to identify the "Company," "Affiliates," and "Customers" repeatedly referenced therein. *See* <u>Exhibit A</u>. Furthermore, the Independent Contractor Agreement document is missing any relevant date (including the effective date), description of professional services to be rendered, or reference to any other document that could plausibly support an inference that Newell agreed to the terms of the Independent Contractor Agreement document with any, some, or all of the Plaintiffs. *See* <u>Exhibit A</u>. And to be sure, Plaintiffs do not identify any source of contractual obligations binding Newell other than the Independent Contractor Agreement document attached as <u>Exhibit A</u> (which does not bind Newell, as set forth above).

The absence of Newell's signature or other form of acknowledgement of the Independent Contractor Agreement document does not reflect an inconsequential technicality or minor error that can be resolved by simply amending the Original Complaint.[2] To the contrary, the absence of Newell's signature and/or acknowledgement of the contractual obligations contained in <u>Exhibit A</u> and cited by Plaintiffs in the Original Complaint **fundamentally prohibits** Plaintiffs from establishing Newell's acceptance of, and agreement to be bound by, the terms set forth in the Independent Contractor Agreement document. *See Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008) (A valid acceptance is made when, among other factors, "the acceptance

---

[1] Tellingly, Plaintiffs do not allege that Newell signed or acknowledged the Independent Contractor Agreement document; instead, Plaintiffs assert only that Newell "entered into *an* agreement." (Original Complaint at ¶ 17) (emphasis added).

[2] Although not relevant to the legal deficiency of the Original Complaint, counsel for Newell assures the Court that on August 26, 2021 it conferred with Plaintiffs' counsel of record and requested a copy of the Independent Contractor Agreement document signed or otherwise acknowledged by Newell. To date, Plaintiffs have not provided any such copy—if one even exists—thereby necessitating this Motion.

was communicated to the offeror, and . . . the form of the acceptance was clear and definite."). Unable to establish Newell's acceptance of the terms of the Independent Contractor Agreement document, Plaintiffs cannot, then, establish the existence of a valid contract with Newell. *See Morris*, 2013 WL 8476110 at *3-4 ("Plaintiffs must plead sufficient facts to plausibly show that both a valid contract existed and that each individual defendant was a party to the contract."); *see also Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 670 (Tx. App.—Fort Worth 2010) ("For a contract to exist, there must be an offer, acceptance, and consideration.").

As a threshold matter, Plaintiffs' inability to plead facts sufficient to establish the existence of a legally valid contract with Newell is **dispositive** of their breach of contract claim against her. *See Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*, 2013 WL 12153574 at *2 (E.D. TX July 16, 2013) (finding plaintiff who failed to identify contract in complaint failed to establish breach of contract claim against defendant). Accordingly, Count One of Plaintiffs' Original Complaint fails as a matter of law.

Like Count One, Plaintiffs' remaining statutory claims as pleaded in Counts Two through Four are entirely premised and contingent upon the Independent Contractor Agreement document contractually binding Newell. As Plaintiffs allege in Count Two,

> Newell **expressly agreed** not to "disclose, give, transmit or otherwise convey" [Plaintiffs'] confidential or proprietary information "in whole or in part, to any other party." Newell's access to and ability to use [Plaintiffs'] confidential and proprietary information was narrow and limited. Newell **lacked the effective consent** of [Plaintiffs] to share confidential information with Vardi. . . . Newell's accessing of [Plaintiffs'] computer systems to provide information to Vardi lacked Plaintiffs' effective consent and was therefore a violation of Texas Penal Code § 33.02(a).

(Original Complaint at ¶¶ 37-38) (citing Exhibit A at Section 4.2) (emphases added). Similarly, in Count Three Plaintiffs contend that:

9

> Newell accessed [Plaintiffs'] computer networks and computer systems with the intent to harm Plaintiffs by providing their confidential and proprietary information to Vardi **in violation of clear and conspicuous prohibitions on such behavior in the [Independent Contractor] Agreement**. *Thus,* **Newell lacked the effective consent** of Plaintiffs to share confidential information with Vardi. . . . Newell also **violated the confidentiality provisions of the Independent Contractor Agreement**, in violation of Texas Pen. Code § 33.02(b-1)(2)(B)(ii).

(Original Complaint at ¶ 42) (emphases added). And in Count Four, Plaintiffs claim that Newell:

> intentionally accessed [Plaintiffs'] computers in the process of creating and sending links to cloud-based documents containing confidential information from the computer systems to Vardi. . . . intentionally accessed [Plaintiffs'] computers in the process of uploading files to cloud-based documents in order to transfer confidential information from the computer systems to Vardi. . . .[and] intentionally accessed [Plaintiffs'] computers in the process of downloading files in order to attach them to emails to Vardi in order to transfer confidential information from the computer systems to him.
>
> Newell did so **without authorization and exceeding her authorized access** *because* **the confidentiality provisions of her Independent Contractor Agreement expressly barred her** from transmitting confidential information to other parties. Newell knew that she lacked authorization to transmit confidential information to Vardi, and *thus* **she intentionally violated her agreement** with Crossover.

(Original Complaint at ¶¶ 46–49) (emphases added).

Thus, Plaintiffs directly attribute and allege that Newell lacked the "effective consent" necessary to violate Texas Penal Code §§ 33.02(a) and 33.02(b-1) in Counts Two and Three respectively *solely because* **Newell acted in violation of the purported contractual obligations** to Plaintiffs set forth in the Independent Contractor Agreement. *See* Original Complaint at ¶¶ 41-44, 46-49; s*ee also* <u>Exhibit A</u> at Sections 4.1-4.3, 6.2, and 6.4. By the same reasoning, Plaintiffs claim in Count Four that Newell acted without authorization in violation of 18 U.S.C. § 1030(a)(2)(C) *solely because* **she violated the confidentiality provisions of the Independent Contractor Agreement**. In other words, the provisions of Independent Contractor Agreement

document are the **sole basis** for Plaintiffs' statutory claims against Newell in Counts Two, Three, and Four.

But as analyzed above, Plaintiffs fail to plead sufficient facts to plausibly show that the unsigned, unacknowledged Independent Contractor Agreement document is a valid contract binding Newell and Plaintiffs. Because the Court cannot reasonably infer that the Independent Contractor Agreement document binds Newell, the Court cannot reasonably infer that, on the basis of the Independent Contractor Agreement document, Newell is liable to Plaintiffs for the alleged violations of Texas Penal Code §§ 33.02(a)-33.02(b-1) and 18 U.S.C. § 1030(a)(2)(C) as pleaded in Counts Two through Four, respectively. Consequently, Counts Two through Four against Newell are deficient as a matter of law and, like Count One, must be dismissed.

No other counts remain. As a result, Plaintiffs' Original Complaint against Newell must be dismissed as a matter of law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## Conclusion

For the foregoing reasons, Plaintiffs' Original Complaint fails to state a claim upon which relief can be granted and should be dismissed in its entirety as a matter of law.

## II.   DEFENDANT'S MOTION TO COMPEL MEDIATION

In the alternative, Newell respectfully submits this Motion to Compel Mediation and in support thereof states as follows:

1.  As explained above in Newell's Motion to Dismiss Plaintiffs' Original Complaint, each of Plaintiffs' four claims against Newell hinge on Plaintiffs' foundational contention that the Independent Contractor Agreement document attached as Exhibit A to the Original Complaint is a valid contract between Plaintiff(s) and Newell. According to Plaintiffs, Newell's conduct not only breached her contractual obligations under the Independent Contractor Agreement (Count

One) but also violated Texas Penal Code §§ 33.02(a)-33.02(b-1) and 18 U.S.C. § 1030(a)(2)(C) (Counts Two through Four, respectively). However, on its face the unexecuted Independent Contractor Agreement document does not bind Newell, as set forth above. Altogether lacking contractual validity, the Independent Contractor Agreement document cannot sustain Plaintiffs' claims as pleaded, thereby rendering Plaintiffs' Original Complaint deficient as a matter of law per Rule 12(b)(6) of the Federal Rules of Civil Procedure.

2. That said, in the event the Court finds that the Independent Contractor Agreement ("Agreement") *does* constitute a valid and enforceable contract between Plaintiff(s) and Newell and therefore denies Newell's Motion to Dismiss Plaintiffs' Original Complaint, Newell calls the Court's attention to Section 13.10 of the Agreement, which **expressly requires the parties to mediate all of the claims alleged in the Original Complaint**, and then if no settlement is reached in mediation, to proceed to arbitration. Pursuant to Section 13.10 of the Agreement:

> **Any dispute, controversy or claim arising under, out of or relating to this Agreement and any subsequent amendments of this Agreement, including, without limitation, its formation, validity, binding effect, interpretation, performance, breach or termination, as well as non-contractual claims, will be submitted to mediation** in accordance with the WIPO Meditation Rules. The place of mediation will be Austin, Texas. The language to be used in the mediation will be English. If, and to the extent that, any such dispute, controversy or claim has not been settled pursuant to the mediation within sixty (60) days of the commencement of the mediation, it shall, upon the filing of a request for arbitration by either party, be **referred to and finally determined by arbitration** in accordance with the WIPO Arbitration Rules.
>
> Alternatively, if, before the expiration of the sixty (60) days, either party fails to participate or to continue to participate in the mediation, the dispute, controversy or claim shall, upon the filing of a request for arbitration by the other party, be **referred to and finally determined by arbitration** in accordance with the WIPO Arbitration Rules. The place of arbitration will be Austin, Texas. The language to be used in the arbitral proceedings will be English.
>
> The parties may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other interim or conservatory relief **as necessary**, without breach of this Section and without abridgment of the powers of

    the arbitrator.  You agree and acknowledge that no dispute resolution or litigation shall be pursued by you for any breach of this Agreement until and unless our Company has received notice, and had an opportunity to cure any alleged breach.

*See* Exhibit A (emphases added).

   3. Each of the four claims Plaintiffs raise in their Original Complaint against Newell clearly arises from the Agreement and relates to the Agreement's validity, binding effect, interpretation, performance, and breach, among other areas of dispute.[3]  For example, under the heading entitled "Nature of the Action," Plaintiffs plead that "[i]n an explicit breach of her contractual obligations to [Plaintiffs], Newell improperly accessed their computer systems for the purposes of improperly transmitting significant amounts of confidential and proprietary company information to unauthorized third parties with the intent to injure and harm Plaintiffs."  *See* Original Complaint at ¶ 2.  And as set forth in her Motion to Dismiss Plaintiffs' Original Complaint, Newell counters that because the Independent Contractor Agreement document is not a valid contract, she cannot be liable for any alleged breach of the document's terms or for violations of Texas Penal Code §§ 33.02(a)-33.02(b-1) and 18 U.S.C. § 1030(a)(2)(C) stemming from any alleged breach of the document's terms.

   4. Because the four claims comprising Plaintiffs' Original Complaint against Newell clearly arise from the Agreement and relate to the Agreement's validity, binding effect, interpretation, performance, and breach, among other topics in dispute, Section 13.10 of the Agreement **expressly requires** Plaintiffs and Newell to submit their dispute to mediation, and if the mediation is unsuccessful, to arbitration—*not* to litigation before this Court.

---

[3] Specifically, Plaintiffs cite Sections 4.1, 4.2, 4.3, 6.2, and 6.4 of the Agreement as the bases for Count One (breach of contract), Count Two (violation of Texas Penal Code § 33.02(a)), Count Three (violation of Texas Penal Code § 33.02(b-1)), and Count Four (violation of 18 U.S.C. § 1030(a)(2)(C)) of the Original Complaint.

5.      In other words, Section 13.10 plainly reflects Plaintiffs' and Newell's intent to mediate (and potentially arbitrate), not to litigate, this dispute.  When construing a contract and discerning the contracting parties' intent, the Court "give[s] contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Craig Sessions, M.D., P.A. v. TH Healthcare, Ltd.*, 412 S.W.3d 738, 743 (Tex. App.—Texarkana 2013) (quoting *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009)).  Here, where Section 10.13 unambiguously calls for the parties to submit any dispute arising out of the Agreement to mediation, "the language of the contract alone expresses the parties' intent, and it **must be enforced as written**." *See Craig Sessions, M.D., P.A*, 412 S.W.3d at 743 (quoting *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)) (emphasis added).

6.      Section 13.10 sets forth in plain, unambiguous terms Plaintiffs' and Newell's intent that disputes arising out of the Agreement shall be submitted to mediation (and potentially arbitration thereafter).  Accordingly, the Court should enforce Section 13.10 as written and compel Plaintiffs to submit all claims alleged in their Original Complaint against Newell to mediation. *See, e.g., Craig Sessions, M.D., P.A*, 412 S.W.3d at 743.

7.      In enforcing the Agreement as written, the Court should reject any argument by Plaintiffs that their request for a preliminary injunction, among other forms of relief sought,[4] falls outside of Section 13.10's mediation requirement.  Though Section 13.10 allows parties to "apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other interim or conservatory relief *as necessary*," (emphasis added), a preliminary injunction is not "necessary" to protect Plaintiffs' interests under the circumstances, where all relief potentially

---

[4] For Newell's purported breach of the Agreement, Plaintiffs seek the following forms of relief: a temporary injunction, a permanent injunction, statutory damages, compensatory damages, exemplary damages, punitive damages, and attorneys' fees and costs.  (Original Complaint, Prayer for Relief.)

obtained by a temporary injunction is **secured by a permanent injunction**, and where a temporary injunction and a permanent injunction are functionally identical.  Indeed, Plaintiffs seek **identical relief** from both a temporary and permanent injunction.[5]  Because a permanent injunction secures all relief potentially available to Plaintiffs from a temporary injunction, a temporary injunction is not "necessary" under Section 10.13 and therefore does not exempt Plaintiffs' claims from Section 10.13's mediation requirement.

8. This is not to say that Plaintiffs could obtain a temporary injunction, for the facts as pleaded in the Original Complaint do not allege "extraordinary circumstances" in which a temporary injunction is "necessary to protect the [Plaintiffs] from irreparable injury or to preserve the court's power to render a meaningful decision after a trial on the merits." *See Stacey G. by William and Jane G. v. Pasadena Indep. Sch. Dist.*, 695 F.2d 949, 955 (5th Cir. 1983).  To this point, Plaintiffs have not filed a separate application for a temporary restraining order or preliminary injunction against Newell, as required by Rule CV-65 of the Local Court Rules of the U.S. District Court for the Western District of Texas.  Plaintiffs' failure to file such an application further illustrates that a temporary or preliminary injunction, apart from a permanent injunction, is not "necessary" to protect their interests; as such, Plaintiffs' request for a temporary injunction does not allow Plaintiffs to avoid the mediation requirement expressly agreed to in Section 13.10.

9. Because the Agreement as written clearly requires Plaintiffs to submit their claims against Newell to mediation (and potentially arbitration thereafter), the U.S. District Court for the

---

[5] Plaintiffs seek both a temporary injunction and a permanent injunction that accomplish identical objectives: "(1) Prohibit[] Newell from using, disclosing, disseminating, distributing, or discussing Plaintiffs' proprietary and confidential information; and (2) Direct[] Newell to return or destroy all copies of Plaintiffs' confidential information . . . in her possession, custody, or control and any information derived, directly or indirectly, from Plaintiffs' proprietary and confidential information . . . in her possession, custody, or control." (Original Complaint, Prayer for Relief.)  Notably, Plaintiffs fail to allege any facts expressing or implying an urgent nature of the injunctive relief sought, as would distinguish a preliminary or temporary injunction from a permanent injunction.

Western District of Texas is **not** the proper forum for resolving Plaintiffs' dispute with Newell, which arises out of and relates to the parties' Agreement. Continuing this litigation in this or any another court would therefore waste limited judicial resources and needlessly delay mediation and potential resolution of the serious allegations against Newell.

10. For these reasons, if the Court finds that the Agreement constitutes a valid and enforceable contract between Plaintiff(s) and Newell, the Court should enforce the Agreement as written and, pursuant to the plain terms of Section 13.10 of the Agreement, compel Plaintiffs to mediate all of the claims against Newell alleged in the Original Complaint.

WHEREFORE, Defendant, Stephanie Newell, respectfully requests that this Court dismiss Plaintiffs' Original Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, compel mediation, and for all other just and appropriate relief.

DATED and FILED this 29th day of September, 2021.

Respectfully submitted,

DENTONS US LLP

By: */s/ Laura Gibson*
Laura Gibson
State Bar No. 07869350
lgibson@dentons.com
Glenn Ballard
State Bar No. 01650200
glenn.ballard@dentons.com
1221 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 658-4635
(713) 739-0834 Facsimile

**ATTORNEYS FOR DEFENDANT, STEPHANIE NEWELL**

**CERTIFICATE OF SERVICE**

  I certify that on September 29, 2021 a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record, including the following:

Mr. Scott L. Cole
Quinn, Emanuel Urquhart & Sullivan, LLP
201 West 5th Street, 11th Floor
Austin, TX 78701
scottcole@quinnemanuel.com

Mr. Asher B. Griffin
Quinn, Emanuel Urquhart & Sullivan, LLP
201 West 5th Street, 11th Floor
Austin, TX 78701
ashergriffin@quinnemanuel.com

               */s/ Laura Gibson*